## 11989

### SAMS v. ARTHUR *ET AL.*

#### (133 S. E., 205)

1. FACTORS—A "FACTOR" IS AN AGENT WHO IN PURSUANCE OF HIS TRADE OR BUSINESS, AND FOR COMPENSATION, SELLS MERCHANDISE CONSIGNED OR INTRUSTED TO HIS POSSESSION FOR THAT PURPOSE.— A "factor" is an agent, who, in pursuance of his usual trade or business, and for compensation, sells goods or merchandise consigned or intrusted to his possession for that purpose by or for the owner.

2. MASTER AND SERVANT—INDIVIDUAL IS CHARGED WITH CONSEQUENCES OF ACTS DONE INDIRECTLY BY ANOTHER AT HIS COMMAND.—Individual is charged with consequences of act done directly by him or indirectly by another at his command, and is held liable for acts done by another at his command under principle of *qui facit per alium facit per se.*

3. MASTER AND SERVANT—COURT, HAVING RIGHT TO APPLY PRINCIPLE OF RESPONDEAT SUPERIOR IN GIVEN CASE, CAN DENY ITS APPLICATION TO ANOTHER CASE.—A Court having right to declare what public policy may be in a given case and apply principle of *respondeat superior* con declare what it may be in another case, and deny its application.

4. PRINCIPAL AND AGENT.—Principal is not liable under principle of *respondeat superior* for delicts of agent, where agent employs his own servants and directs their movements without slightest interference by principal.

5. PRINCIPAL AND AGENT.—Oil company *held* not liable for damages resulting from collision between milk wagon and oil truck used in distributing its products, where truck belonged to one claimed to be its agent, and driver was employed and directed solely by him.

Before C. J. RAMAGE, SPECIAL JUDGE, Union, November, 1924. Reversed and remanded, with directions.

Action by M. R. Sams against W. D. Arthur and the Gulf Refining Company. Judgment for plaintiff, and defendant last named appeals.

The contract fixing the relation between the two defendants and directed to be reported is as follows:

NOTE: Master's civil responsibility for wrongful or negligent act of his servant or agent toward one who has no claim upon the master by reason of a contract incipient or perfected, see note in 27 L. R. A. 161.

## Exhibit 1

This memorandum of agreement, made and entered into this 11th day of October, 1913, by and between the Gulf Refining Company, Atlanta, Ga., party of the first part, and W. D. Arthur, of Union, S. C., party of the second part, witnesseth:

The party of the second part agrees to rent a warehouse at Union, S. C., suitable for the storage of oils, at $8.33 dollars per month, rental of said warehouse to be paid by the said party of the first part.

Party of the first part agrees to ship to party of the second part lubricating oils, illuminating oils, and gasoline, in carload lots, which shipments are to be received by the party of the second part, and sold by him at prices named by the party of the first part—all sales of such oils to be for cash, or, if on credit, only to such parties as are acceptable to party of the first part and upon terms authorized by them.

Where first party orders second party to sell on credit, second party shall deliver a signed receipt, or, in case the oil is shipped out of the city of Union, S. C., second party will deliver an original bill of lading from the railroad company, which shall constitute a receipt.

Party of the second part is to be responsible to the party of the first part for all goods shipped to him, and is to account for all sales in accordance with above paragraph, sending weekly a statement showing all moneys received by him from sale of above-named goods.

Second party shall render to party of the first part statement on the first day of each month, showing in detail the goods on hand.

Second party agrees to pay all drayage and delivery charges, and collect all empty drums and barrels, and ship same back to first party as ordered.

It is strictly understood that all goods shipped party of the second part by party of the first part are the property of the party of the first part until sold.

On or about the first of each month, party of the first part will send to party of the second part a statement showing the sales made by party of the second part during the preceding month, remitting party of the second part commission earned on such sales, said commission to be $1\frac{1}{2}$ cents per gallon on kerosene and gasoline when sold in milk cans or tank wagons, and $1\frac{1}{2}$ cents per gallon when sold in original package such as drums, barrels, cans, or cases, and 10 per cent of invoice price on lubricating oils, where oil is delivered by party of the second part without payment of railroad freight charges. Where shipments are made by railroad, commission to party of the second part is to be $1\frac{1}{2}$ cents per gallon on kerosense and gasoline and 10 per cent. of the invoice on lubricating oils, and party of the first part is to allow party of the second part amount of freight paid on such shipments.

Party of the first part reserves the privilege of making shipments from its stock of goods in hands of second party, and second party agrees to fill such orders as may be sent them by party of the first part—no commission to be allowed party of the second part on such shipments, but first party will pay second party 25 cents per barrel for drayage and clerical work in making such shipments.

This contract may be terminated by either party upon ten days' written notice to the other party, and upon such termination each party shall settle with the other in full any and all amounts which may be due by either party to the other.

This contract is signed in triplicate, and is effective only when approved by the general sales manager of first party.

GULF REFINING COMPANY,

By J. W. Pearse, D. T. M.

W. D. ARTHUR.

Approved:

W. V. HARTMAN,

Asst. General Sales Manager.

Two cents per gallon commission on both kerosene and gasoline on wagon deliveries to points outside of a radius of two miles of the center of Union, S. C.

Effective April 1, 1920, the rate of commission has been increased to .2 cents per gallon on both city and country deliveries of kerosene and gasoline. Authority—Mr. W. V. Hartman's letter March 20, 1920.

*Messrs. Sawyer & Kennedy,* for appellant, cite: *Court to construe written contract:* 92 S. C., 95; 31 S. C., 378; 19 S. C., 121. *Independent contractor:* 31 S. C., 378; 181 Ind., 219; 104 N. E., 65; 151 La., 824; 92 So., 350; 191 Mich., 405; 19 A. L. R., 1164; Ann. Cas., 1916-D, 220. *Employer not liable for negligence of independent contractor:* 105 S. C., 319; 73 S. C., 213; 31 S. C., 378; 9 S. E., 1059; 49 S. C. L., 201; 57 Vt., 252; 52 Am. Rep., 129; 117 S. E., 274; 103 S. E., 492; 38 Kan., 330; 16 P., 728; 20 A. L. R., 678; 17 N. Y., 104; 5 N. Y., 48; 55 Am. Dec., 304; 34 Conn., 474; 103 Pa., 32; 86 Pa., 156; 51 Pa., 475; 46 Pa., 213; 51 Tex., 503; 21 Ohio St., 212; 8 Ohio St., 358; 4 Ohio, 399; 95 Me., 154; 57 Ala., 175; 35 N. J., 17; 101 Va., 354; 97 Va., 631; 65 L. R. A., 445; 168 Ill., 514; 48 N. E., 163; 50 Ill. App., 510; 65 Minn., 355; 68 N. W., 45; 2 C. J., 424; 26 Cyc., 970 and 1546; 18 R. C. L., 782; 14 R. C. L., 79; 1 Thompson on Negligence, Sec. 622; 4 Words & Phrases, 3542; Cooley on Torts, 646; Elliott on Railroads, 63. *Directed verdict proper where only one inference may be drawn from testimony:* 91 S. C., 17.

*Messrs. Young & Long,* for respondent, cite: *Servant and independent contractor distinguished:* 128 S. E., 259; 2 Holme's Edition of Kent's Commentaries, 260, note. *Principal bound by acts of his factor:* 2 Bay, 271; 25 C. J., 419. *Factor:* 25 C. J., 347; 11 R. C. L., 782. *Agency proved by acts of the parties:* 124 S. C., 346. *Principal liable for negligence of agent:* 127 S. C., 349; 121 S. C., 407; 93 S. C., 131; 69 S. C., 413; 65 S. C., 45; 37 S. C., 377; 13 S. C., 5.

*Scope of employment:* 120 S. C., 511.   *Ratification of tort:* 108 S. C., 179; 91 S. C., 131.   *Agency is question of law and fact:* 126 S. C., 503.

May 19, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action by the plaintiff against the defendants W. D. Arthur and Gulf Refining Company for damages on account of a collision between an oil truck and a milk wagon, in which the wagon and horse were injured. The truck belonged to the defendant, Arthur, and the Gulf Refining Company was sought to be held liable along with Arthur, upon the ground that Arthur was acting as the agent of the company at the time of the collision. The trial resuled in a verdict in favor of the plaintiff against both of the defendants for $300, and from the judgment entered upon the verdict the defendant, Gulf Refining Company, alone has appealed. The appeal will be considered only upon the question of alleged error in refusing a motion by the defendant-appellant for a directed verdict upon the ground discussed in what follows:

The relation between the Gulf Refining Company and W. D. Arthur was fixed by the written contract between them which was in evidence, the duty of construction of which was upon the presiding Judge. From the terms of that contract, which will be incorporated in the report of the case, it appears beyond controversy that the relation was that of principal and factor, the latter of which is thus defined in 25 C. J., 340:

"A factor is an agent who, in pursuance of his usual trade or business, and for a compensation. commonly called factorage or commission, sells goods or merchandise consigned or intrusted to his possession for that purpose by or for the owner."

It appears from the evidence that the business of Arthur

was handled by him according to his own methods, except as modified by the contract. The truck belonged to him, and the driver was employed and directed solely by him. The company had absolutely nothing to do with either. The liability of a principal or master for the torts of his agent or servant committed while acting within the actual scope of his agency or employment is based upon the principle of *respondeat superior*. This principle is a declaration by the Courts of the public policy of the State.

An individual is charged with the consequences of an act done directly by himself or indirectly by another at his command. *Qui facit per alium facit per se;* and it is none the less his own act that it has been done by his agent thereunto specially authorized. If the agent should do an act not at the direction of the principal or master, but within the line, scope, or course of his employment, the principal or master is held liable, not because it is his act, for, as a matter of fact, it is not, but upon grounds of public policy under the principla of *respondeat superior*. A corporation can act only through agents, and where an act is done by one of them, specially directed thereunto by the corporation, it is the act of the corporation. Where the act done is not by the direction of the corporation, but within the line, scope, or course of the employment, the corporation is held liable, ordinarily, not because the act is that of the corporation, for it is not, but upon grounds of public policy under the principle of *respondeat superior*. The principle *qui facit* must not be confounded with that of *respondeat superior*. It is a common misconception to attribute the liability of a master for the delicts of his servant in every case to the principle of *respondeat superior*. The servant may cause injury in doing the very thing that the master directs him to do. In that case the master is held liable because the law holds that the act is that of the master, although done through the servant, under the principle *qui facit per alium facit per se*. He is, therefore, held responsible for his own

act. But, on the other hand, the servant may cause an injury, while engaged within the line or scope of his employment, in doing an act which the master has not directed him to do or has specifically directed him not to do. It is the act of the servant, not the master, and the latter is held responsible upon grounds of public policy; the liability in such case being expressed by the phrase *respondeat superior.* The principle is entirely distinct from that of *qui facit,* and owes its origin to an entirely different source; the one to public policy and the other to the fixed principles of law and justice.

In *Hearns v. Hospital,* 66 Conn., 98; 33 A., 595; 31 L. R. A., 224, it is said:

"The law which makes one responsible for his own act, although it may be done through another, and which is expressed by the primary meaning of the maxim, *qui facit per alium facit per se,* is based on a principle of universal justice. The law which makes one responsible for an act not his own, because the actual wrong doer is his servant, is based as a rule of public policy. The liability of a charitable corporation for the defaults of its servants must depend upon the reasons of that rule of policy, and their application to such a corporation."

In *Railroad Co. v. Dixon,* 179 U. S., 136; 21 S. Ct., 69; 45 L. Ed., 121, the Court says:

"The liability of the master for the negligence of his servants in his absence, and without his concurrence or express direction, arises solely from the policy of the law which requires that he shall be held responsible for the acts of those he employs."

In *Helms v. Railroad Co.* (C. C. A.), 120 F., 392, the Court says:

"The master is not held liable because he is negligent, but solely upon considerations of public policy. * * * The master is responsible, but he is not negligent."

Now, then, if the injurious act has been committed by

the corporation, that is, by an agent thereunto specially authorized, it necessarily is the act of the corporation. The principles of law and justice absolutely fix liability upon the corporation for the consequences of that act, and no Court is authorized to legislatively relieve the corporation therefrom.

But it is different where the injurious act is not the act of the principal, but it is the act of a servant of the agent, in a matter over which the principal has no manner of control. There a condition is presented for the application or not of the principle of *respondeat superior,* the application of which in every case is based upon public policy, not upon a fixed principle of universal justice and law. The Court having the right to declare what public policy may be in a given case, and to apply the principle of *respondeat superior,* it has with equal propriety the right to declare what it may be in another case and deny its application. *Lindler v. Hospital,* 98 S. C., 25; 81 S. E., 512.

The reason which has supported the principle of *respondeat superior,* based upon the judicial interpretation and declaration of public policy, is that the principal, selecting his agent and directing the manner in which he shall execute the agency, should, in justice to third persons with whom the agent may deal, and who are not responsible either for his selection or conduct, be held liable for his torts.

Where the agents employs his own servants, and directs their movements, without the slightest interference by the principal, it is manifest that the reason for holding the principal responsible for the delicts of the agent no longer exists, and the principal cannot be held liable for the delicts of a servant of the agent, under the circumstances.

It is not conceivable that, if a merchant should ship cotton to a factor for sale and accounting of the proceeds, and a person should be injured by reason of the negligence of a drayman of the factor hauling the cotton from the railroad

to the warehouse of the factor, the merchant shipper would be held liable to the person so injured.

The cases of *Phipps v. Gulf Refining Company*, 25 Ga. App., 384; 103 S. E., 472, and *Gulf Refining Company v. Harris*, 30 Ga. App., 240; 117 S. E., 274, are precisely in point. See, also, 26 Cyc., 1546, where the principle upon which the principal is held liable for the tort of his agent is specifically limited to cases where the power of selecting, directing, and discharging is lodged with the principal. For these reasons the motion of the defendant, the sole appellant here, for a directed verdict in its favor should have been granted.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in favor of the appellant under Rule 27:

Messrs. Justices Watts and Marion, and Mr. Acting Associate Justice R. O. Purdy concur.

Mr. Chief Justice Gary did not participate.