13576

TATE v. CLAUSSEN-LAWRENCE CONST. CO. *ET AL.*

(167 S. E., 826)

*Messrs. C. B. Earle* and *Haynesworth & Haynesworth,* for appellant, Gulf Refining Company,

*Mr. J. M. Nickles,* for appellant, Claussen-Lawrence Construction Company,

*Messrs. Greene & Greene* and *J. M. Mars,* for respondents,

February 7, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Plaintiff brought this action to recover damages for the destruction by fire of his garage and filling station building situate at Calhoun Falls in Abbeville County, through the alleged joint and concurrent negligence, willfulness, and wantonness of the defendants. The garage and filling station were occupied by McLanahan Brothers, under a contract from Gulf Refining Company, who were lessees from Dr. Tate, the owner thereof. The building was situate at the intersection of Savannah and Depot Streets. The complaint states the alleged negligence of Claussen-Lawrence Company in this wise: This concern was engaged, under a contract with the State Highway Department, in paving a highway which extended from Calhoun Falls to Abbeville. At a point at, or near, the intersection of Savannah and Depot Streets in the Town of Calhoun Falls, the construction company, as we shall call it, was engaged in paving Depot Street. At a

point variously estimated by the witnesses as from 9 feet, 10 inches, to 12 or 15 feet from the filling station, the construction company had set up a board with a warning that the road was closed to travel. About, or after, sundown of the 18th day of September, 1931, it placed at the foot of this warning barricade a torch or flambeau, consisting of a metal pot with lighted wick, the flame being uncovered. Then the complaint alleges the negligence of the Gulf Refining Company concurred with the negligence of the construction company in the following manner: Shortly after the flambeau was placed, the agent of the Gulf Refining Company, which we shall designate as the refining company, drove up to the filling station, backed the truck he was driving up to the station for the purpose of filling the underground tank. The procedure was as follows: A funnel was fitted into the receiver of the underground tank, into the metal drum containing the gasoline was fitted a rubber hose, and the faucet on the drum turned, which released the gas into the mouth of the funnel; that the gas in the funnel was thus in the open air; that in such circumstances gas will vaporize, and seek the level of the ground, especially in the evening; that in this instance it did so vaporize, drifted, or was driven by the wind to the burning flambeau, and an explosion followed, which ignited the gas in the funnel; that the driver of the truck who was engaged in putting the gas in the funnel, jerked the hose from the funnel when the explosion came, waved it about excitedly, scattering gas on the building, on an automobile and on persons, causing the conflagration which destroyed the building to spread.

The construction company for answer set up a general denial.

The refining company for a first defense set up a general denial, and for a second defense alleged that the driver of the truck who was engaged in the act of placing the gas in the tank was the servant and employee of C. A. Dixon,

who under a written contract with the refining company was an independent contractor in distributing the products of the said company; that under the contract the refining company had nothing to do with the driver, or the truck, nor any control of them; that it was, under the terms of the contract, expressly released from any responsibility for the acts, or omissions, or negligence of Dixon, his agents, servants, and employees; that under the contract Dixon was to sell and distribute the products of this defendant on a commission basis merely and this defendant did not retain any control over the means or methods by which this was done; that Dixon furnished his own equipment, employed his own servants, and directed their movements, without interference by the refining company.

The case came on for trial by Judge Ramage and a jury, and the plaintiff had a verdict against both defendants.

At the conclusion of the testimony for plaintiff, counsel for the construction company moved for nonsuit, which motion was refused. At the conclusion of all the testimony both defendants moved for directed verdict, and after the verdict both of the defendants moved for new trial; all of which motions were denied, and both defendants appeal.

The exceptions of the construction company allege error for that; There is no evidence of actionable negligence on the part of this appellant:

That if it be shown that this defendant was negligent as set forth in the complaint, it is conclusively shown by the testimony that such negligence was not the proximate cause of the damage.

That it conclusively appears from the testimony that the negligence of the defendant, Gulf Refining Company, or its alleged agent, Dixon, or the driver of the truck, was the proximate cause of the injury.

That it was error to refuse the motions for nonsuit, directed verdict, and new trial.

The exceptions of the refining company are upon the grounds that: It was error to refuse its motion for directed

verdict because under the written contract it appeared that the relationship between the refining company and Dixon was that of employer and independent contractor. That the evidence showed no negligence on the part of this defendant, but showed that the driver of the truck was not the agent or servant of this defendant, but was the servant or employee of Dixon, an independent contractor.

Error to the presiding Judge for failing to instruct the jury as a matter of law that under the written contract between the refining company and Dixon, which contract was in evidence, Dixon was an independent contractor, and hence defendant could not be held liable for the negligence of the driver of the truck of the independent contractor.

Error in admitting in evidence, over objection, the lease agreement between Tate and the refining company, the authorized dealer agency agreement between the refining company and McLanahan, and the courtesy card given Tate by the refining company.

One is reminded by the attitude of these litigants toward each other of the famous triangular duel in which Midshipman Easy shot the purser, the purser shot the boatswain, who shot at but missed the midshipman.

The cardinal question which confronts us at the threshold of the case is this: Does the contract between the refining company and C. A. Dixon alone determine the relationship between them, and does it show as a matter of law that the refining company is the employer and C. A. Dixon is an independent contractor for the sale and distribution of the products of the company? An allied question is: May that relationship be shown by evidence independently of the contract, or supplemental of the contract? In other words, may the plaintiff show that while the written contract may fix the relationship of employer and independent contractor between the refining company and Dixon in regard to the selling and distribution of the products of the company, nevertheless it is competent to show by other evidence that there are other

contracts and connections between the parties which create in regard thereto the relationship of principal and agent.

The appellant the refining company has planted itself squarely upon the decision of this Court in the case of *Sams v. Arthur,* 135 S. C., 123, 133 S. E., 205, in which the Court construed a contract somewhat similar in its terms to that introduced in this case, and held that it established between the Gulf Refining Company and Arthur the relationship of employer and independent contractor, and that it being the duty of the Court to construe the written instrument, it was error not to grant the motion for directed verdict made in behalf of Gulf Refining Company.

In our case the trial Judge refused to grant such a motion, but in charging the jury he gave this defendant the full benefit of the doctrine of the *Sams case* by charging the jury in these words: "I charge you as to this memorandum of agreement between Gulf Refining Company and C. A. Dickson—I charge you if that is all—if this contract is the only thing—if this contract, this writing, is the only thing you find upon which to base liability against the Gulf Refining Company in the case, you find a verdict for the Gulf Refining Co. (Exhibiting Exhibit '4'.) This paper here— you take that paper in the room with you—if that is. all that the plaintiff has—if that paper is all that the plaintiff has against the Gulf Refining Company, you find for the Gulf Refining Company. If there is no other evidence in the case to connect the Gulf Refining Co., with this case, except that, you find a verdict for the Gulf Refining Company."

Manifestly his Honor recognized the controlling force of the *Sams case, supra,* and gave this appellant the full benefit of it. But manifestly, too, he thought there was evidence in this case, aside from the contract, which made it his duty to send the case to the jury on the question whether the driver of the truck, by whose negligence in placing the gasoline in the tank it is alleged the vaporized gasoline came in contact with the flambeau and caused the fire, was the agent

or servant of the refining company, even though it appeared that he was immediately employed by Dixon.

It would not have been proper for the Court to state what the evidence was which in his opinion showed a relationship other than that fixed by the written contract; that might be held to be a charge on the facts.

It would appear that the case of *Sams v. Arthur, supra,* turned and was decided solely upon the construction of the contract. The record does not disclose that any other evidence of the relationship between the Gulf Refining Company and Arthur was offered in the case, except that it appeared: "That the business of Arthur was handled by him according to his own methods, except as modified by the contract. The truck belonged to him and the driver was employed and directed solely by him. The company had absolutely nothing to do with either."

Is there evidence in this present case, outside the written contract, which distinguishes it from the case of Sams?

There was introduced in evidence, over the objection of the defendant, the Gulf Refining Company, a written contract of lease of the garage premises by J. V. Tate to the Gulf Refining Company, and written contract of lease from the refining company to A. L. McLanahan of the same premises. It was competent to show the ownership of the property, and the proceedings by which McLanahan was in possession of it. If the contract between the refining company and McLanahan contained anything which threw light on the relationship between the refining company and Dixon, which would tend to show that when Dixon sent, on the evening of the fire, gasoline to McLanahan in his own truck driven by his own driver, he was acting in obedience to instructions from the refining company and as its agent, then the contract was competent and relevant and was properly admitted in evidence. Does it contain such evidence?

The contract states that the refining company does thereby appoint McLanahan its commission *agent* to sell its products on commission through the service station leased by it (the refining company) in the Town of Calhoun Falls. The refining company contracts to *consign to McLanahan* such quantities of gasoline, lubricating oil, kerosene, and other products of its goods as in its judgment will be necessary to supply the trade; and that it would exercise reasonable diligence to keep McLanahan supplied with the commodities as his trade may require. A. L. McLanahan testified that when he began business under that contract they (Gulf Refining Company) put in a quantity of gasoline, oil, etc., and instructed him that when he wanted gasoline "notify Mr. Story, their agent," and he would bring it down. That Mr. Story was succeeded by Mr. Dixon. Clearly, the contract was competent and relevant. The jury might well deduce from this evidence that in delivering this gasoline, Dixon, through the agency of his truck and his driver was carrying out the refining company's contract to keep McLanahan supplied with gasoline and in so doing he was acting as the company's agent. And it is true as to the courtesy card given by the refining company to Mr. Tate and for which collection was made by Dixon; there is nothing in the written contract to require Dixon to make such collections, and the jury would be justified in the conclusion that Dixon was the agent of the company in all of its business.

There is other evidence from which the jury might infer that the driver of the truck which delivered the gasoline when the fire occurred was the agent of the refining company. In placing the gasoline in the tank he was using a funnel and hose which were the property of the refining company. Under the contract Dixon was required to furnish all of the implements and utensils with which he conducted his business; the jury might well ask why on this particular occasion he should be using the uten-

sils of the refining company. If it was the duty of Dixon as agent of the refining company to supply gasoline to Mc-Lanahan when he needed it, and in doing so he employed his own driver and that driver was negligent, that negligence was attributable to the refining company.

It appears further that by a rider to the original contract between the refining company and Dixon which appears in a communication from the company to Dixon, that with reference to the distributor's contract between him and the company "the following circuit points will be made by you * * * Lowndesville, Mt. Carmel, Hester and Lanier." It is a legitimate inference in the light of the evidence that the refining company had established filling stations at these points under contracts similar to that with McLanahan; by which it had bound itself to keep these agencies supplied with gasoline and oil, and by this rider was instructing its agent, Dixon, to serve them, just as he served McLanahan.

The warehouse from which Dixon operated was rented by the refining company. On it is a sign with these words: "Distributing Agency, Gulf Refining Company, Kerosene and High Grade Gasoline." The bills for goods sold from this place of business were made out on billheads of the Gulf Refining Company.

All these things cited had some probative bearing on the question of the agency of Dixon and made it the duty of the Court to submit it to the jury.

These contracts are artfully drawn with a view to relieve the corporation of any liability of any sort arising from any cause, and they carefully declare that there. is no contract of agency between the parties. But that mere declaration does not make the contract something other than agency if a proper construction of its terms shows that the relation is one in fact of principal and agent. In the case of *McNeill v. Electric Storage Battery Co.,* 109 S. C., 326, 327, 96 S. E., 134, 135, the Court said: "It is true the contract provided that the relation of principal

and agent should not exist, but when the provisions of a contract make a contract of agency then it is a contract of agency, and it makes no difference by what names the parties may call themselves."

It may well be doubted if there is not in the contract between the refining company and Dixon intrinsic evidence of a relationship of principal on the part of the refining company and agent on the part of Dixon, and if there is not sufficient difference between this contract and that in *Sams v. Arthur, supra,* to justify the Court in declaring that this case is not controlled by that. However, it is not necessary to do so. There is evidence dehors that contract which properly took the case to the jury.

In 14 R. C. L., at page 76, it is stated, quoting from Section 13 : "While in all ordinary transactions the existence of the relation of contractor as between two given persons excludes that of principal and agent, or master and servant, there is not necessarily such a repugnance between them that they cannot exist together, and an employee may be an independent contractor as to certain work and yet be a mere servant as to other work for the same employer. Thus an independent contractor for the construction of a railroad may be a mere servant of the company as to the putting in of crossings; or a contractor for the carpenter work of a house may be a servant as to the residue of the work. Nor does the fact that there may be intimate business relations between the contractor and employer and that the former is the latter's servant in other matters necessarily establish the dependency of the contractor in a particular case." *Standard Oil Company v. Parkinson* (C. C. A.) 152 F., 681, 683.

If we concede then that Dixon was a contractor for the general business of distributing the refining company's products, there is evidence that he was the agent of that company for the purpose of supplying McLanahan with

gasoline, which made it the duty of the Court to send that issue to the jury.

That there was evidence of negligence in and about placing the gasoline in the tank is not seriously contested.

■ The appellant, the construction company, denied that it was guilty of any actionable negligence. The undisputed evidence is that the servant of this appellant placed a lighted torch, or flambeau, the flame of which was uncovered, and blown about by the breeze, within nine to twelve or fifteen feet of a filling station where gasoline and oil might at any moment be handled. The Court properly submitted to the jury the question whether a person of ordinary care and prudence would have so acted. The jury decided the issue against the contention of appellant. They were justified in that finding.

■ This appellant further contends that it is not liable, for the reason that its action in placing the flambeau was not the proximate cause of the explosion and conflagration: That it had placed the flambeau an appreciable length of time before the gasoline was attempted to be put in the tank; that if it be conceded that it was negligence to place the flambeau where it was put, that was not the proximate cause of the injury, because the conduct of the agent of the refining company in the negligent handling of the gasoline was the intervening independent act which was the proximate cause. We cannot concur in this argument. It is patent from the evidence that it was the combined, concurring negligence of the two defendants which operated as the proximate cause of the injury. If the flambeau had not been placed where it was the explosion would not have occurred. Even with the flambeau there, there would have been no explosion but for the negligence of the man who was delivering the gasoline in the tank. Appellant seems to argue that because there was no immediate community of action between the defendants both of them could not be liable.

In the case of *Bridge v. Orange Crush Bottlers et al.,* 164 S. C., 351, 162 S. E., 325, 328, this was said: "We can conceive of no logical reason why acts of negligence committed by two or more persons at different times and places may not follow their separate ways and finally meet and concur in producing an event which causes injury which gives to the injured one a single cause of action predicated upon the joint liability of those who set in motion the train of acts of negligence which culminated in the injury."

In the case of *Pendleton v. Columbia Ry., G. & E. Co.,* 133 S. C., 331, 131 S. E., 265, 267, the Court said: "That a single injury, which is the proximate result of the separate and independent acts of negligence of two or more parties, subjects the tort-feasors, even in the absence of community of design or concert of action, to a liability which is both joint and several, is a proposition recognized and approved in this State and supported by the great weight of authority elsewhere." Citing *Matthews v. Seaboard Air Line Railway,* 67 S. C., 499, 46 S. E., 335, 65 L. R. A., 286; *Steele v. Atl. Coast Line Railroad Co.,* 95 S. C., 124, 78 S. E., 705; Cooley on Torts (3d Ed.) 246, 38 Cyc., 488.

If we have not separately mentioned the several exceptions of the appellants, each of them has been considered and determined in the conclusions we have reached and declared.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Blease, Mr. Justice Stabler and Mr. Acting Associate Justice C. C. Featherstone concur.