17490

P. L. DEAN, Petitioner, v. George Bell TIMMERMAN, Jr., Governor
of the State of South Carolina, Jeff B. Bates, Treasurer of the
State of South Carolina, and South Carolina State
Highway Department, Respondents

(106 S. E. (2d) 665)

*T. B. Bryant, Jr., Esq.,* of Orangeburg, *for Petitioner,*

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, and *Huger Sinkler,* of Charleston, *for Respondents,*

January 13, 1959.

TAYLOR, Justice.

With permission this action was brought in the Original Jurisdiction where Petition was filed alleging the invalidity and unconstitutionality of a provision of Section 7 of the Statute enacted at the 1958 Session of the General Assembly commonly referred to as the State Appropriation Bill.

The 1958 General Assembly found itself faced with an apparent deficit in revenues for the fiscal year beginning July 1, 1958, and ending June 30, 1959. To avoid that deficit, the General Assembly determined to renew the so-called "7th cent" of the gasoline tax, which, in the absence of such legislation, would have expired as of June 30, 1958. The revenue to be raised thereby for the fiscal year beginning July 1, 1958, and ending June 30, 1959, was appropriated to the General Fund of the State, as distinguished from the so-called "Highway Fund" into which five of the remaining six cents of the gasoline tax goes. (The other cent goes directly to the counties.) At the same time, the General Assembly evidenced its desire to continue the program of enlarging and improving the Secondary Highway System, sometimes called the Farm-to-Market roads. This program had been initiated pursuant to Act 565, Acts of 1946, March 28, 44 St. at Large, p. 1519, and continued under subsequent acts which placed the additional 7th cent tax on gasoline. Act 824, of the Acts of 1952, March 12, 47 St. at Large, p. 2031, was instrumental to the carrying out of the program in that it provided for adding roads to the Secondary System in those counties where there was insufficient mileage of unpaved roads already in the Secondary System. Funds to meet the costs of this program came from the so-called "7th cent" of the gasoline tax.

Following its use of the 7th cent of the gasoline tax for general purposes for the fiscal year beginning July 1, 1958, the General Assembly appropriated the proceeds of that 7th cent to the Secondary Highway Program for the fiscal years

to end June 30, 1972; and in order that there would be no departure from the program during the fiscal year beginning July 1, 1958, it directed the issuance of $6,500,000.00 of bonds, the proceeds of which with other available funds, would carry out the program during the fiscal year beginning July 1, 1958.

The Act under attack, denominated Section 7 of part 2 of the 1958 State Appropriation Bill (Act No. 855), April 4, 1958, 50 St. at Large, p. 1829, is as follows:

"Section 7

"Sections 65-1062 and 65-1081, 1952 Code, amended—additional tax of one cent per gallon on gasoline—Highway Department may issue bonds for secondary system—Section 33-107, 1952 Code amended—establishment of belt lines and spurs by Highway Commission further restricted.

"(A). Section 65-1062 Code of Laws of South Carolina, 1952, is amended by adding the following paragraph:

" 'In addition to the tax imposed by this section, every such oil company shall pay to the State an additional amount of money equal to one cent per gallon on all gasoline, combinations thereof or substitutes therefor, sold or consigned, used, shipped or distributed for the purpose of sale within this State.'

"(B). Section 65-1081, Code of Laws of South Carolina, 1952, is amended by adding the following paragraph:

" 'In addition to the tax imposed by this section, every such person, firm, corporation, municipality or county, 'or any subdivision thereof, shall pay an additional tax of one cent per gallon for every gallon of gasoline or other like product of petroeleum, under whatever name designated on which a tax is imposed by this section.'

"(C). All the provisions of Chapter 12 of Title 65, Code of Laws for South Carolina for 1952, as amended, shall apply with equal force and effect to the additional tax on gasoline levied by this Act.

"(D). For the fiscal year commencing July 1, 1958, and ending June 30, 1959, the monies collected by South Carolina Tax Commission, pursuant to the provisions of this Act, shall be deposited with the State Treasurer to the credit of the General Fund of the State.

"(E). In order that the program of improvement of highways in the State Highway Secondary System shall be continued throughout the fiscal year beginning July 1, 1958, in the manner now provided by Act 371 of the Acts of the General Assembly for the year 1953, the State Highway Department shall make request to the State Treasurer for the issuance of Six Million Five Hundred Thousand Dollars ($6,500,000.00) of State Highway Bonds, whose proceeds shall be expended on the State Highway Secondary System and apportioned among the several counties of the State in the manner provided by paragraph (G) hereof. Upon receipt of such request the State Treasurer shall issue State Highway Bonds under the conditions prescribed by Chapter 4 of Title 33, Code of Laws of South Carolina for 1952, as amended, except that the last of said bonds shall mature not later than June 30, 1972, and, notwithstanding that they shall be secured in the manner prescribed by Section 33-284, said bonds shall be additionally secured and payable from the revenues derived from the tax levied by paragraphs (A), (B) and (C) *supra*.

"(F). In determining the amount of the 'sinking fund payments required by Section 33-265, Code of Laws of South Carolina, 1952, the additional revenue accruing to the State Highway Department, as provided hereby, shall not be considered.

"(G). For the fiscal years commencing July 1, 1959 and ending June 30, 1972, the monies collected by the South Carolina Tax Commission, pursuant to the provisions of this section, shall be deposited with the State Treasurer and applied to the payment of principal and interest on the bonds authorized by paragraph (E). Any sum that shall remain after effecting such payment shall be expended on the State

Highway Secondary System and, together with any other funds made available for the purpose, shall be apportioned among the counties of the State in the following manner: one-third in the ratio which the land area of the county bears to the total land area of the State, one-third in the ratio which the population of the county bears to the total population of the State as shown by the latest official decennial census, and one-third in the ratio which the mileage of all rural public roads in the county bears to the total rural road mileage in the State as shown by the latest official records of the State Highway Department. Notwithstanding any provision of law to the contrary, all roads designated for hard surfacing in the State Secondary Highway System in any fiscal year shall be selected from a list submitted during such year in writing by the Senator and at least one-half of the House Legislative Delegation of the county in which such roads may be located.

"(H). That during the 14 year period of this act the Farm to Market Program or State Secondary Highway Program shall each year be at least equal to the amount of revenue derived from the tax of 1¢ on motor fuel.

"(1). Section 33-107 Code of Laws of South Carolina, 1952, is hereby amended so that the said section will read as follows:

" 'Section 33-107. The State Highway Commission may establish such belt lines or spurs as it deems proper and construct and maintain such belt lines and spurs from funds otherwise provided by law for the construction and maintenance of the State Highway System, but the total length of such belt lines and/or spurs to be established or constructed in any county shall not exceed two miles in any one fiscal year.'

"(J). The provisions of this section shall become effective July 1, 1958, and remain in effect until June 30, 1972.

"(K). All acts or parts of acts inconsistent with this act are hereby repealed to the extent of such inconsistency.

"(L). Upon approval by the Governor, this section shall take effect July 1, 1958."

It will be noted that Subsection G of the Act contains the following language upon which this action is based:

"* * * Notwithstanding any provision of law to the contrary, all roads designated for hard surfacing in the State Secondary Highway System in any fiscal year shall be selected from a list submitted during such year in writing by the Senator and at least one-half of the House Legislative Delegation of the county in which such roads may be located."

Petitioner in this cause seeks a Declaratory Judgment from this Court holding that such provision is unconstitutional in that it is in contravention of Art. 1, Section 14, of the State Constitution, in that it is an encroachment upon the powers of the Executive Branch of the State Government.

Respondents invoke the rule of partial unconstitutionality and assert that should the questionable language be stricken as unconstitutional the remainder of Section 7 should be allowed to stand.

The petitioner challenges this contention and alleges that if the questioned language be stricken as unconstitutional, Section 7 must fall in its entirety.

The 1958 General Assembly, faced with a substantial deficit in State finances, at the same time realized the need of extending and improving the Secondary Highway System. To meet the deficit for the fiscal year beginning July 1, 1958, and in order to continue the program of aid to and improving the Secondary Highway System, adopted Section 7 of Act 855 of 1958. The declared purpose of this Section is to accomplish both purposes; and in order that there be no departure from the program of expanding the Secondary Highway Program beginning July 1, 1958, the State Highway Department was directed to borrow monies which with other funds on hand would provide the means for continuing the program during this fiscal year.

This Court is hesitant to declare an Act of the Legislature unconstitutional and will do so only where the unconstitutionality appears beyond a reasonable doubt

and there is no other recourse. We are unable, however, to distinguish this case from that of *Bramlette v. Stringer,* 186 S. C. 134, 195 S. E. 257, decided by this Court in 1938 and thereafter adhered to, *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397.

In *Bramlette v. Stringer, supra,* the subject under consideration here was gone into in detail and considerable length, discussing prior decisions, citing with approval some, differentiating some and overruling *Ruff v. Boulware,* 133 S. C. 420, 131 S. E. 29, insofar as it was in conflict with that decision. In commenting upon the duties of the General Assembly with respect to the issuance of bonds and the selection of roads to be improved through the proceeds thereof, this Court stated [186 S. C. 134, 195 S. E. 264]:

"Here the General Assembly is seeking no necessary information, and none of the duties involved by this act upon the Legislative Delegation are of a supervisory nature, or are incidental to their duties as members of the Legislature, but on the other hand are fully discretionary acts, relating exclusively to the executive functions in the government of Greenville county, and in our opinion such parts of the acts as attempt to give the delegation the discretion to say what amount of bonds should be issued, how they should be issued, and what roads should be constructed or improved by the proceeds of the bonds and the loan, are clear violations of article 1, section 14, of the Constitution, and are therefore null and void."

The Opinions of an Appellate Court should remain as constant as the proper administration of justice under an enlightened government will permit; and the doctrine of *stare decisis* is a vital prerequisite thereto, especially is this so in the field of public finance.

We are, therefore, of opinion that the decision of this Court in *Bramlette v. Stringer, supra,* is applicable to and determinative of the first question in this case.

There remains for consideration the question of whether or not the unconstitutionality of Subsection G renders Sec-

tion 7 unconstitutional and, therefore, must fall in its entirety or whether the remainder of the Statute will be permitted to stand.

It is a fundamental principle that a Statute may be constitutional in one part and unconstitutional in another part, and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. 11 A. J. 834.

When the residue of an Act, sans that portion found to be unconstitutional, is capable of being executed in accordance with the Legislative intent, independent of the rejected portion, the Act as a whole should not be stricken as being in violation of a Constitutional Provision. *Gaud v. Walker*, 214 S. C. 451, 53 S. E. (2d) 316; *Moseley v. Welch*, 209 S. C. 19, 39 S. E. (2d) 133; *Parker v. Bates*, 216 S. C. 52, 56 S. E. (2d) 723.

The question as to whether portions of a Statute, which are constitutional, shall be upheld, while other divisible portions are eliminated, is regarded as primarily one of Legislative intent.

A review of legislation on this subject since 1946 reveals that the General Assembly desired that the State Highway Department take over from the counties more and more of the burden of maintaining and operating the Secondary Roads. The Title of the Act questioned is revealing in that it sets forth the subjects covered and purports among other things:

"* * * To Amend Sections 65-1062 and 65-1081, So As To Impose An Additional Tax Of One Cent Per Gallon On Motor Fuel, And To Provide For The Disposition Of The Proceeds Of Such Tax; To Provide For The Issuance Of Bonds By the State Highway Department For The Construction Of Farm-To-Market Roads, And To Prescribe The Method Of Designating Such Roads; To Provide That An Amount Equal To The Tax Of One Cent Per Gallon On

Motor Fuel Be Expended Annually On The State's Secondary Highway System; To Amend Section 33-107 Of The Code Of Laws Of South Carolina, 1952, So As To Further Restrict The Establishment And Construction Of Belt Lines And Spurs By The Highway Commission; * * *"

We are of opinion that the history of the legislation on this subject clearly shows that the Legislature has for many years intended that the State Highway Department shall assume an increasing portion of the burden of maintaining and operating the Secondary Roads, that Sections A, B, C, D, I, J, K, L of the Act under attack are capable of being executed in accordance with such intention independent of Sections E, F, G, H thereof; and that Respondents should be and are hereby permanently enjoined from issuing such bonds as are provided therein or otherwise doing such things as are inconsistent with this Opinion.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.