18472

M. Marion DECKER, as Executrix of the Estate of Carolyn Gohl Schmidt, Appellant, v. The BISHOP OF CHARLESTON, Respondent.

(147 S. E. (2d) 264)

318

*Messrs. Moore, Mouzon & McGee,* of Charleston, *for Appellant,*

*Messrs. Grimball & Cabaniss,* of Charleston, *for Respondent,*

March 8, 1966.

Moss, Acing Chief Justice.

The Bishop of Charleston, a corporation sole, the respondent herein, was created by an Act of the General Assembly of South Carolina, approved December 13, 1880, 17 Stat. 321, and was authorized "to purchase, hold, possess, and enjoy in fee simple or in any lesser estate, any property,

either real or personal, to be held, enjoyed, possessed, or used, for the purpose of a church, hospital, parsonage, burial ground, schoolhouse, or any or all of said purposes, or for the erection, repair, maintenance, support or keeping up of them, or any or all of them, * * *." It is alleged in the complaint herein that the respondent is the owner of a church building located in the City of Charleston, and known as The Cathedral of St. John The Baptist, and said Cathedral is operated "for church purposes for the benefit of its members and other persons, including especially adherents of the Catholic faith."

It is alleged in the complaint that on April 8, 1963, Carolyn Gohl Schmidt entered The Cathedral of St. John The Baptist and proceeded up the center aisle to the altar rail in order to say her prayers. When she had finished, she turned from the altar rail and walked back toward the center aisle and at a point near the front-most pew she fell off the platform onto the main church floor, a distance of approximately six inches, seriously injuring herself. She alleges that her injuries were proximately caused by the negligence of the respondent.

It is further alleged in the complaint that the respondent owned among its non-trust and non-chairtable assets a policy of insurance which insured it against bodily injury liability to third persons. The *ad damnum* prayer is for actual damages in the sum of Seventy-five Thousand ($75,000.00) Dollars, or such lesser amount as does not exceed limitations of the respondent's liability insurance.

The respondent demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action because the action is one against an eleemosynary corporation, a charitable institution, for an alleged tort; and under the settled rule of this State such a corporation is immune from liability for torts.

The demurrer came on to be heard before the Honorable J. A. Spruill, Presiding Judge, and he issued his order on

February 19, 1965, sustaining the said demurrer. This appeal followed.

The record shows that after this action was commenced that Carolyn Gohl Schmidt died and M. Marion Decker, the executrix of her last will and testament, was substituted as plaintiff. In this capacity he is the appellant before this Court.

The appellant concedes that the respondent is a charitable institution or organization and that under the previous decisions of this Court it is immune from tort liability. However, he argues that the doctrne of charitable immunity should be overruled and the charity held liable for its torts.

The doctrine of charitable immunity was first announced by our Court in the case of *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512. The case involved alleged injuries suffered by a paying patient in a hospital supported, in part, by charity. The appeal was heard by an *en banc* court. A majority of the court held that the hospital was charitable in nature and immune from tort liability, saying that "[t]he true ground upon which to rest the exemption from liability is that it would be against public policy to hold a charitable institution responsible for the negligence of its servants, selected with due care."

The doctrine of charitable immunity was next considered and reaffirmed in the case of *Vermillion v. Woman's College of Due West,* 104 S. C. 197, 88 S. E. 649. In the cited case it was said:

"* * * the exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbid the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants of employees. * * *"

In the *Vermillion case* the appeal was from an order of nonsuit. This Court reversed the order of nonsuit and remanded the case to the lower Court for the purpose of determining the relation of the defendant to the public, determining whether or not it was a charitable institution, for the reason that the defendant had offered no evidence to prove its relation to the public, and in order to allow the plaintiff to show "that defendant is not, in fact, within the reason of the rule established in *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512, upon the authority of which the nonsuit was granted." The *Vermillion* case was tried in the lower Court and from an order directing a verdict for the defendant, the plaintiff again prosecuted an appeal to this Court. The judgment below was affirmed, this Court holding that under the evidence the defendant was within the reason of the rule established in the *Lindler case.* 111 S. C. 156, 97 S. E. 619.

In the case of *Peden v. Furman University,* 155 S. C. 1, 151 S. E. 907, this Court held that a charity, though exempt from liability for negligence, was nevertheless liable for property damages resulting from a nuisance.

The doctrine was again applied in *Caughman v. Columbia Y. M. C. A.,* 212 S. C. 337, 47 S. E. (2d) 788, and it was held that the said association, as an employer, was protected by the charitable immunity rule so as to shield it from a workmen's compensation claim. In holding that a charitable organization or institution was not liable under the Workmen's Compensation Act, this Court said:

"In determining whether the Legislature intended that the Act should apply to charitable institutions, it is also necessary to consider the status of such institutions with reference to tort liability prior to the enactment of this legislation. The question of the liability of a charitable institution to respond in damages for the negligence of its managers, agents and servants has been before the courts on numerous occasions. It is one upon which there has been, and is, a con-

flict of decisions not only upon the question of liability but under what circumstances it exists; and among those courts adhering to the rule of non-liability, there has also been a remarkable diversity of opinion as to the correct reason or ground for so deciding. Some courts hold that there is no liability to those who avail themselves of the benefits of the charity, but impose liability where the injured person is a stranger to the institution or to its charity, or is an employee or servant, or is on the premises by express or implied invitation. An exhaustive review of the decisions of all the states and a learned discussion of the subject will be found in *Andrews v. Young Men's Christian Association,* 226 Iowa 374, 284 N. W. 186, and *President and Directors of Georgetown College v. Hughes,* 76 U. S. App. D. C. 123, 130 F. (2d) 810. The writer is strongly impressed with the *view* adopted in a number of jurisdictions that such institutions should unqualifiedly be held responsible for their negligence. However, the question has been settled in this jurisdiction by adoption of the rule of full immunity of such institutions from the torts of their agents and servants. * * *"

The case of *Bush v. Aiken Electric Coop. Inc.,* 226 S. C. 442, 85 S. E. (2d) 716, was one for damages for personal injury. The defendant interposed a demurrer on the ground that it was a non-profit rural electric co-operative and not subject to liability for tort. Upon appeal by the defendant from an order overruling the demurrer, this Court held that even though a rural electric co-operative was a non-profit organization, where it had been formed by voluntary association of its members for their own benefit and not for advancement of common good, it was not a charitable corporation immune from tort liability. In this case it was stated that under our decisions charitable institutions or corporations, on grounds of public policy, enjoy full immunity from tort liability. Cited in support of this are the *Lindler, Vermillion* and *Caughman cases.*

324

In *Eiserhardt v. State A. & M. Society of South Carolina,* 235 S. C. 305, 111 S. E. (2d) 568, we held the charitable immunity doctrine inapplicable to a commercial venture conducted by a charitable corporation, saying:

"And we do not think immunity should be extended to a situation where the activity out of which the alleged liability arose is primarily commercial in character and wholly unconnected with the charitable purpose for which the corporation was organized. This view is supported by the overwhelming weight of authority. Annotation 25 A. L. R. (2d) at page 130."

It is the position of the appellant that the foregoing cases and the charitable immunity doctrine established thereby should be entirely overruled and no longer followed as the law of this State. This Court granted the appellant leave to argue against the authority of the foregoing cases.

It is the position of the appellant that the doctrine of charitable immunity should be eliminated entirely from our law. It is asserted that there is a clear trend in the decisions of the courts of this country away from the charitable immunity doctrine. Cases are cited from many jurisdictions where the immunity rule has been either qualified or abandoned. Even though the charitable immunity doctrine has been abandoned by the courts in an number of states, many courts still adhere to the immunity rule. *Crossett Health Center v. Croswell,* 221 Ark. 874, 256 S. W. (2d) 548; *Cornelius v. Sinai Hospital of Baltimore,* 219 Md. 116, 140 A. (2d) 567; *Williams v. Randolph Hospital,* 237 N. C. 387, 75 S. E. (2d) 303; and *Roanoke Hospital Association v. Hayes,* 204 Va. 703, 133 S. E. (2d) 559. The rule of charitable immunity in this State is rested on considerations of public policy and is invoked in favor of a true charity.

The appellant also argues that charitable immunity is a creature of judical decision and this Court should overrule its previous decisions. He asserts in language taken from

*Pierce v. Yakima Valley Memorial Hospital,* 43 Wash. (2d) 162, 260 P. (2d) 765, that "We closed our courtroom doors without legislative help, and we can likewise open them." This statement disregards what we said in *Rogers v. Florence Printing Co.,* 233 S. C. 567, 106 S. E. (2d) 258, as follows:

"It is often the function of the courts by their judgments to establish public policy where none on the subject exists. But overthrow by the courts of existing public policy is quite another matter. That its establishment may have resulted from decisional, rather than statutory, law, is, in our opinion, immaterial. Once firmly rooted, such policy becomes in effect a rule of conduct or of property within the state. In the exercise of proper judicial self-restraint, the courts should leave it to the people, through their elected representatives in the General Assembly to say whether or not it should be revised or discarded."

The foregoing statement was reaffirmed in *McKenzie v. City of Florence,* 234 S. C. 428, 108 S. E. (2d) 825, and *Page v. Winter,* 240 S. C. 516, 126 S. E. (2d) 570. For us to withdraw immunity from charitable institutions at this time, against the existing background of decisions of the court would, in effect, be an act of judicial legislation in the field of public policy. Whether some change in our rule is advisable is a question to be considered and resolved by the law making body.

It is our conclusion that the doctrine of charitable immunity should not be overruled. The doctrine is particularly applicable in this case. Here, we have a true charity, the church, engaged in conducting a religious service and, in which, Carolyn Gohl Schmidt was participating at the time of her injury.

The appellant urges that an exception to the doctrine of charitable immunity should be made to the extent that the charity has liability insurance which protects its trust assets from impairment by the collection of a judgment for tort liability.

In 14 C. J. S. Charities § 75(a), at page 550, it is said: "The fact that a charitable organization has procured indemnity or liability insurance will not impose liability on it fort the torts of its agents where it would not otherwise be liable." The same principal is stated in 10 Am. Jur., Charities, Sec. 152, at page 701, in these words: "The fact that a charitable institution carries indemnity insurance indemnifying it from liability to a recipient of its bounty does not create liability, in instances where such charitable organizations are immune from liability."

There is a conflict of authority on the question of whether a charitable institution or corporation becomes liable to an injured party to the extent of coverage afforded by a liability insurance policy. Some courts refuse immunity to such charities when they carry liability insurance. *Wendt v. Servite Fathers,* 332 Ill. App. 618, 76 N. E. (2d) 342; *O'Conner v. Bolder Colorado Sanitarium Association,* 105 Colo. 259, 96 P. (2d) 835, 33 A. L. R. 819; *Cox v. DeJarnette,* 104 Ga. App. 664, 123 S. E. (2d) 16. However, the courts in the majority of the jurisdictions in which the question has arisen held that the procurement by a charitable corporation of liability insurance does not of itself create liability where, independently of such insurance, no liability exists. The immunity of a charity from tort liability is not lost or affected by the fact that the charity carries liability insurance. *Fortugno v. Trachtenberg,* D. C., 202 F. Supp. 177; *Cristini v. Griffin Hospital,* 134 Conn. 282, 57 A. (2d) 262; *Williams v. Church Home,* 223 Ky. 355, 3 S. W. (2d) 753, 62 A. L. R. 721 (decided when immunity doctrine was recognized in Kentucky); *McKay v. Morgan Memorial Co-op. Industries & Stores,* 272 Mass. 121, 172 N. E. 68; *Podvin v. St. Joseph Hospital,* 369 Mich. 65, 119 N. W. (2d) 108; *Schulte v. Missionaries of La Salette Corp.,* Mo., 352 S. W. (2d) 636; *Muller v. Nebraska Methodist Hospital,* 160 Neb. 279, 70 N. W. (2d) 86 (followed *Cheatham v. Bishop Clarkson Memorial Hospital,* 160 Neb. 297, 70 N. W. (2d) 96; *Parks v. Holy Angel Church,* 160 Neb.

299, 70 N. W. (2d) 97); *Herndon v. Massey,* 217 N. C. 610, 8 S. E. (2d) 914; *Südekum v. Animal Rescue League,* 353 Pa. 408, 45 A. (2d) 59; *Meade v. St. Francis Hospital,* 137 W. Va. 834, 74 S. E. (2d) 405; *Fisher v. Ohio Valley General Hospital Asso.,* 137 W. Va. 723, 73 S. E. (2d) 667. See also Section 37 of the Annotation in 25 A. L. R. (2d) at page 139, and Vol. 3, A. L. R. (2d) Later Case Service, page 749.

In *McKenzie v. City of Florence,* 234 S. C. 428, 108 S. E. (2d) 825, we held that a municipality was immune from tort liability on account of actions of its police officers and merely because city and surety company entered into a bond for the use and benefit of the police department and bond by wording indemnified only the municipality, it did not waive its sovereign immunity from tort liability as to the amount of the bond. In *Maxey v. Sauls,* 242 S. C. 247, 130 S. E. (2d) 570, we held that upon the grounds of public policy an unemancipated child has no right of action against his parent for personal injuries caused by the parent's negligence. We further held that the protection of the parent by liability insurance does not act to create liability to unemancipated child or cause of action for injuries to child where none otherwise existed. These cases are of persuasive authority on the issue here under consideration.

It is our conclusion that the procurement by a charitable organization of liability insurance does not create liability in instances in which such organization is immune from liability. We think this is sound in principle and is supported by the weight of authority.

The exceptions of the appellant are overruled and the order appealed from is affirmed.

Affirmed.

Lewis, Bussey and Brailsford, JJ., and Legge, Acting Associate Justice, concur.