20420

Lydia Y. BROWN and Charles H. Brown as Administrators of the Estate of William J. Brown, Appellants, v. ANDERSON COUNTY HOSPITAL ASSOCIATION, Respondents.

(234 S. E. (2d) 873)

*Messrs. Isaac Joe, Jr., of Mitchell, Bishop & Joe,* Greenville, *and J. LeVonne Chambers, and Louis L. Lesesne, Jr., of Chambers, Stein, Ferguson & Becton,* Charlotte, N. C., *for Appellants,*

*H. Grady Kirven, Esq., of Watkins, Vandiver, Kirven, Long & Gable,* Anderson, *for Respondent,*

*Ronald L. Motley, Esq., of Blatt, Fales, Bedinfield, Load-holt, Poole & Motley,* Barnwell, *for the South Carolina Trial Lawyers Amicus Curiae Committee,*

May 10, 1977.

RHODES, Justice.

The plaintiffs brought this action in their representative capacity on behalf of the widow and nine children of the deceased, William Joseph Brown, seeking damages for the death of the deceased while he was a patient at Anderson

Memorial Hospital.[1] The defendant asserted several defenses, including that of charitable immunity, and moved for summary judgment. The circuit judge granted the defendant's motion on the ground that the defendant is an eleemosynary corporation and is, therefore, immune from liability for claims based upon the alleged negligence and recklessness of its agents, servants, or employees. From the order granting summary judgment the plaintiffs appeal. We reverse and remand.

On July 20, 1974, Brown was admitted as a patient to Anderson Memorial Hospital. The plaintiffs alleged that upon admission to the hospital, the deceased was strapped into a bed by the defendant's agents and servants, thereby rendering him completely immobile and helpless. While so restrained, a fire began in his room. During the fire the deceased received severe burns resulting in his death. The plaintiffs alleged that the fire and the subsequent failure to protect the deceased from it were a proximate result of negligent and reckless acts and omissions on the part of various servants, agents and employees of the defendant in a number of particulars as set forth in the Complant.

We granted the plaintiffs' Petition, filed pursuant to Rule 8, §10 of the Rules of this Court, to review the earlier decisions of this Court sustaining the defense of charitable immunity in actions of the nature presented to us by this appeal. Additionally, we granted permission to interested parties to intervene as *amici curiae* and to file briefs with respect to the charitable immunity doctrine. A number of such briefs were filed with this Court and have received consideration.

This appeal presents but one question requiring our decisions: whether the defendant, a corporation not for profit, which has as its purpose the maintenance and operation of

---

[1] Anderson Memorial Hospital is operated by the Anderson County Hospital Association, which is a non-profit eleemosynary corporation, chartered by the State of South Carolina in 1906. Any funds accumulated by reason of revenues exceeding expenditures are used for improvements to, or for the operation of, the hospital.

a hospital, and whose funds are derived from private donations, public agencies and paying patients, is immune from liability for injuries caused by the negligence and recklessness of one or more of its employees or servants. Stated another way, the issue is whether the doctrine of charitable immunity is a valid defense to the plaintiffs' action.

The decisions of this Court indicate that the present state of the law in South Carolina with respect to charitable immunity is the following: It is contrary to public policy to hold a charitable institution responsible for the negligence of its servants selected with due care, *Lindler v. Columbia Hospital*, 98 S. C. 25, 81 S. E. 512 (1914), or for servants, agents, employees, or superior officers selected without due care. *Vermillion v. Woman's College of Due West*, 104 S. C. 197, 88 S. E. 649 (1916). The fact that a patient in a charitable hospital pays for a room and attendance does not render the hospital liable for injuries to the patient caused by the negligence of its servants. *Lindler v. Columbia Hospital, supra.* The relation of the injured person to the charity is of no importance so that it is immaterial whether the injured person is an employee or invitee of the institution. *Vermillion v. Woman's College of Due West, supra.* A charitable institution, however, is not exempt from liability for trespass and nuisance arising out of its activities as a lessee. *Peden v. Furman University,* 155 S. C. 1, 151 S. E. 907 (1930). Nor does immunity extend to a situation where the activity out of which the liability arises is primarily commercial in character and wholly unconnected with the charitable purpose for which the corporation was organized. *Eiserhardt v. State Ag. and Mech. Soc. of S. C.,* 235 S. C. 305, 111 S. E. (2d) 568 (1959). Churches have also been exempted from liability for negligence, *Decker v. Bishop of Charleston,* 247 S. C. 317, 147 S. E. (2d) 264 (1966), holding additionally that procurement of liability insurance by the charity does not create liability to the person injured where the charity is otherwise immune from liability. Finally, where the charity commits an intentional tort, it may not interpose the defense

of charitable immunity. *Jeffcoat v. Caine*, 261 S. C. 75, 198 S. E. (2d) 258 (1973).[2]

Charitable immunity was imported to the United States from England by the Supreme Judicial Court of Massachusetts in the case of *McDonald v. Massachusetts General Hospital*, 120 Mass. 432, 21 Am. Rep. 529 (1876) :

"[The *McDonald* case] . . . was the first case in this country declaring charities to be immune from tort liability. It was there held that the funds of a charity are held in trust, the diversion of which courts will not permit. The Massachusetts court, as authority for establishing the rule, cited *Holliday v. St. Leonard's*, 142 Eng. Reprint 769, decided in England in 1861. The *Holliday* case had followed dictum by Lord Cottenham, in *Duncan v. Findlater*, 7 Eng. Reprint 943, handed down in 1839. In 1846, Chancellor Cottenham had uttered similar dictum in *The Feoffees of Heriot's Hospital v. Ross*, 8 Eng. Reprint 1508. However, the dictum of the *Duncan* case was overruled in 1866 *(Mersey Docks Trustees v. Gibbs*, 11 Eng. Reprint 1500), and the *Holliday* case was reversed in 1871. *Foreman v. Mayor of Canterbury*, L. R. 6 Q. B. 214. Thus the Massachusetts court resurrected the rule of *Holliday v. St. Leonard's* 5 years after it was repudiated in England." [Quoted from *Parker v. Port Huron Hospital*, 361 Mich. 1, 105 N. W. (2d) 1 (1960) ].

Despite the fact of its repudiation in England, the doctrine of charitable immunity gained momentum in this country, and it was, at various intervals, adopted in complete or modified versions in many jurisdictions. However, commencing with the State of Rhode Island in 1879, there began a gradual renunciation of the doctrine, in whole or in part, by the

---

[2] The Court in *Jeffcoat* stated that "The foregoing are the prior decisions of this Court. . . . There can be no doubt that the decisions in *Lindler, Vermillion,* and *Decker* contain broad general expressions to the effect that charitable institutions are exempt from all tort liability. However, the broad statement of a rule of complete exemption from tort liability was unnecessary to a decision in those cases, and the rule of charitable immunity has never been extended by our decisions beyond the facts in *Lindler, Vermillion,* and *Decker.* . . ."

states. *Glavin v. Rhode Island, Hospital,* 12 R. I. 411, 34 Am. Rep. 675. Prosser writes that the demise of charitable immunity has been such that the doctrine is alive and well in its complete form in only three states: Maine, New Mexico, and South Carolina. Prosser, *Law of Torts,* Section 133 (4th ed. 1971).

While the ground on which the majority of the *en banc* Court in *Lindler v. Columbia Hospital, supra,* rested its decision was that it would be against public policy to hold a charitable institution responsible for the negligence of its servants selected with due care, this basis for the decision received little discussion from the majority. This ground was strongly criticized by the dissenters speaking through Justice Fraser, who argued that "It is a principle of law as well as morals, that men must be just before they are generous. There is no higher or more just principle than that a trust fund shall remedy the evil itself has done, before it attempts to remedy the evils done by others". 98 S. C. at 35, 81 S. E. at 515. The logic of this rationale, expressed in 1914, has served as the primary thrust for the decline of the doctrine in many American jurisdictions. [3]

The defendant argues that revision or abrogation of the doctrine of charitable immunity in this State should be left to the General Assembly. This Court has stated on several occasions that such a policy should be followed. However, we do not feel that such reasoning should any longer deter us from re-evaluating the doctrine of charitable immunity

---

[3] Another factor contributing to this decline insofar as hospitals are concerned is the fact that hospitals have expanded enormously and now rely on revenue from paying patients to a great extent. *Parker v. Port Huron Hospital, supra.* In the case at bar, the defendant hospital receives over $12,000,000 annually from fees charged and received from paying patients, and receives only $100,000 from Anderson County to pay the expenses of charity patients. While the hospital administrator denied that the appropriation adequately defrayed the expense of treating charity patients, he admitted that the hospial's funds come by and large from paying patients and at least 90% of all patients pay their bills. An auditor's report appended to the deposition of the hospital administrator reflects the fact that the assets of the defendant hospital increased from 13.8 million dollars in 1973 to 14.5 million dollars in 1974.

and determining whether it should be abolished or modified. It must be remembered that this doctrine was not established by legislative enactment but, rather, by opinion of this Court in the *Lindler* case. It is interesting to observe that in the dissenting opinion of Justice Fraser in *Lindler* the following appears: "Courts ought not to legislate, but, if they must, then their legislation should be wise and safe." 98 S. C. at 39, 81 S. E. at 517. In adopting the doctrine of charitable immunity, the majority of the Court at that time judicially legislated public policy and carved an exception to the principle of *respondeat superior*. Although this Court has not taken upon itself the task of modifying the doctrine of charitable immunity until now, the reason for the change of position of this Court is, in part, reflected by the following rationale:

"The law's emphasis ordinarily is on liability, not immunity, for wrongdoing. Respondeat superior has widened it in an institutionally, and to a large extent corporately, organized community. Charity is generally no defense. When it has been organized as a trust or corporation, emphasis has shifted from liability to immuntiy. The conditions of law and of fact which created the shift have changed. The rule of immunity is out of step with the general trend of legislative and judicial policy in distributing losses incurred by individuals through the operation of an enterprise among all who benefit by it rather than in leaving them wholly to be borne by those who sustain them. . . ." *President and Directors of Georgetown College v. Hughes,* 76 U. S. App. D. C. 123, 130 F. (2d) 810 (1942).

The defendant argues that no change in the law of charitable immunity should be made by this Court by reason of *stare decisis*. We reject this argument. This doctrine is not intended "to effect a 'petrifying rigidity,' but to assure the justice that flows from certainty and stability". *Bing v. Thunig,* 2 N. Y. (2d) 656, 163 N. Y. S. (2d) 3, 143 N. E. (2d) 3 (1957). Fundamentally, *stare decisis*

is not a rule of law; it is a matter of judicial policy. 20 Am. Jur. (2d), Courts §184 (1965). It does not render immutable judicial formulations of common law rules.

At the same time, however, we recognize that hospitals play a vital role in this State in the area of health care and the rehabilitation of the sick and injured. It is essential to the public good that hospitals function at the highest level of performance. Therefore, any limitation of the immunity defense as to hospitals should not be interpreted as insensitivity on the part of this Court to legitimate charitable concerns.

The arguments advanced in favor of abolition of the doctrine of charitable immunity are not persuasive. Total abrogation of the doctrine would result in the failure to balance competing yet equally important interests of hospitals and of those persons who are the objects of the hospitals' torts. We, therefore, adopt an intermediate ground and hold that anyone injured through tortious acts of commission or omission of the agents, servants, employees or officers of a charitable hospital in this State may recover damages against such hospital, if the aggrieved party can establish that the injuries occurred because of the hospital's heedlessness and reckless disregard of the plaintiff's rights. This standard of proof is one which is higher than that of simple negligence. It parallels that standard of proof required under S. C. Code §46-801 (1962), known popularly as the Automobile Guest Statute. [4] Immunity fosters neglect and irresponsibility, while liability encourages the exercise of due care. This basic cornerstone of our common law system of jurisprudence is frustrated by total immunity.

We emphasize that our holding is applicable only to hospitals, including this defendant. We do not extend it so as to abrogate or modify the defense of charitable immunity as to churches, rescue missions, orphanages,

[4] The cases dealing with Section 46-801 serve as an adequate starting point for interpreting the necessary standard of proof we set forth in this opinion, to the extent that the holdings in such cases may logically be applied to the facts in a case such as the one at bar.

colleges, and other institutions which are charitable in nature, purpose and operation. The previous decisions of this Court inconsistent with the holding set forth herein are overruled.

We are aware that hospitals in this State have acted ■ in reliance upon the old rule of charitable immunity and may not have taken steps to protect themselves with adequate liability insurance. Therefore, we follow the procedure of other states, such as North Carolina, and hold that the modification of the doctrine of charitable immunity, as set forth in this opinion, applies only to this case and to those causes of action arising after the filing of this opinion, May 10, 1977. See *Rabon v. Rowan Memorial Hospital, Inc.,* 269 N. C. 1, 152 S. E. (2d) 485 (1967).

We reverse the Order of the circuit judge granting summary judgment to the defendant on the ground that it is an eleemosynary corporation, thus entitled to immunity from suit, and remand the case for further proceedings consistent with this opinion.

Reversed and Remanded.

LEWIS, C. J., and LITTLEJOHN, A. J., concur.

NESS and GREGORY, JJ., dissent.

NESS, Justice (dissenting).

I concur in that portion of the majority opinion which minimumly qualifies the doctrine of charitable immunity, however, I do not think the change suggested is sufficient and I dissent. I would abolish the doctrine, as to hospitals, in its entirety.

This doctrine was accepted in the United States *after* it had been repudiated in England. The first court in this country to reject the doctrine was Rhode Island. See *Glavin v. Rhode Island,* 12 R. I. 41, 34 Am. Rep. 675 (1879).

In fact, as stated in the majority opinion, the doctrine in its complete form has been repudiated in all but three states, Maine, New Mexico and South Carolina. Prosser, Law of Torts, Section 133 (4th Ed. 1971).

The doctrine has been universally and soundly criticized as archaic, irrational and unreasonable.

It tends to foster negligence and protects the institution well able to afford payment of damages, placing the financial burden on the one who is least able to bear it.

The seminal charitable immunity decision in South Carolina was *Lindler*[1] and the sharply divided court there rested its holding on public policy grounds. This was strongly criticized by the dissenters who argued:

"It is a principle of law as well as morals, that men must be just before they are generous. There is no higher or more just principle than that a trust fund shall remedy the evil itself has done, before it attempts to remedy the evils done by others." At page 35, 81 S. E. at page 515.

This Court has recognized that the opinions of an appellate court should remain as constant as the proper administration of justice under an enlightened government will permit. *Dean v. Timmerman,* 234 S. C. 35, 106 S. E. (2d) 665 (1969). Thus the issue squarely before us is whether the public policy underpinnings of the doctrine are valid today.

The doctrine of charitable immunity may have been justified under the facts existing at that time. Today we live in a changing world with a new set of facts.

Discouraging charitable endeavors is not the public policy of this State, however, the abrogation of the doctrine, as to hospitals, does not mean that charities will fade away.

"If havoc and financial chaos were inevitably to follow the abrogation of the immunity doctrine, as the advocates for its retention insist, this would certainly have become apparent in the States where that doctrine is no longer a defense." *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 503, 208 A. (2d) 193 at 201. Accord, *Rabon v. Rowan Memorial Hospital,* 269 N. C. 1, 152 S. E. (2d) 485 (1967).

---

[1] *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512 (1914).

Assuming there was justification for the doctrine when it was first announced, it has lost that justification today. In 1960, the Supreme Court of Michigan in *Parker v. Port Huron Hospital,* 361 Mich. 1, 105 N. W. (2d) 1 held:

"It is our conclusion that there is today no factual justification for immunity in a case such as this, and that principles of law, logic and intrinsic justice demand that the mantle of immunity be withdrawn. The almost unanimous view expressed in the recent decisions of our sister States is that insofar as the rule of immunity was ever justified, changed conditions have rendered the rule no longer necessary."

Liability is the rule, immunity the exception. As stated in *Flagiello v. Pennsylvania Hospital, supra,* 417 Pa. at 494, 208 A. (2d) at 198:

"A person may recover damages if he is injured, as the result of negligence, in a hotel, theater, store, skating rink, bowling alley, train or ship, yet he cannot recover if he is hurt in the place where accidents are considered most unlikely to occur—in a hospital, where one goes to be cured of an already existing infirmity and not to be saddled with additional woe and torment. This is indeed the paradox of paradoxes. It has no logic, reason, and least of all, justice to support it. And still more paradoxical is the argument that, by refusing recovery to the victim of a hospital's own negligence, one somehow is serving charity!"

Here the application of the immunity favors a large hospital which derives substantial revenue from paying patients over a paying patient allegedly injured at the hands of those charged with patient care.

I conclude that the public interst is ill served by continuation of the exemption.

"Neither the encouragement of charity and philanthropy nor the doctrine of immunity on the ground of public policy can dispel the fact that the primary interest and welfare of the public requires that one person should not suffer an in-

jury to his or her life or limb without recompense merely in order that all of the earnings of a charitable hospital should be devoted to the purpose of providing charity for others." *Mississippi Baptist Hospital v. Holmes,* 214 Miss. 906, 939, 55 So. (2d) 142, 156. Cited with approval in *Rabon v. Rowan Memorial Hospital,* 269 N. C. 1, 152 S. E. (2d) 485, 493 (1967).

The primary source of funds for hospitals is insurance. It is estimated that more than 70% of its charges are paid by insurance benefits. Another type of insurance makes the doctrine even more unrealistic. Liability insurance is available at reasonable rates. The effect of this cost would not deplete the funds of the hospital, in fact, it could be passed on as patient costs. Some hospitals, in anticipation of the day when they will not have this cloak of immunity, now carry insurance. [2]

Abolition of the immunty as to hospitals does not suggest that I am insensitive to legitimate concerns of charities. I firmly believe that if a hospital functions as a business institution by receiving payments from paying patients for what it offers, it must be a business establishment also in meeting its obligations.

I would abolish the doctrine of charitable immunity in its entirety, as to hospitals, and remand the case for further proceedings consistent with this opinion.

GREGORY, J., concurs.

---

[2] The charity in *Decker v. Bishop of Charleston,* 247 S. C. 317, 147 S. E. (2d) 264 (1966) was insured.