**Claude TERRY and Connie Terry, Plaintiffs,**

v.

**BOY SCOUTS OF AMERICA, INC., a corporation, Defendant.**

Civ. A. No. 76–495.

United States District Court, D. South Carolina, Columbia Division.

Feb. 21, 1978.

Francis T. Draine, Columbia, S. C., for plaintiffs.

R. Davis Howser, Donald V. Richardson, Lawrence B. Orr, Columbia, S. C., for defendant.

ORDER

CHAPMAN, District Judge.

This matter is before the Court on the motion of defendant, Boy Scouts of America, Inc., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The basis for defendant's motion is its claim that the Boy Scouts of America is an eleemosynary corporation created for benevolent and charitable purposes and thus is immune from liability under the doctrine of charitable immunity.

This action was commenced by the parents of a minor who was seriously burned in a tent fire which occurred while the plaintiffs' son, Anthony Terry, was attending a Boy Scout Camporee near Holly Hill, South Carolina, on or about April 9, 1972. At that time, Anthony Terry was a member of a Boy Scout troop and attended the camporee with other boys from his troop. His burns occurred when an alleged "non-flame retardant tent" caught fire. In their complaint, plaintiffs allege, *inter alia*, that defendant is guilty of one or more acts or omissions described by plaintiffs as "careless, negligent, reckless, willful and wanton." Those

acts or omissions are allegedly that defendant:

   (a) Failed to provide any adult supervision.

   (b) Failed to prove adequate supervision.

   (c) Failed to advise the parents of Boy Scouts, and in particular, the Plaintiffs, of the availability of the Defendant's flame retardant tents.

   (d) Failed to advise Boy Scouts and, in particular, the Plaintiffs' son of the flame retardant tents.

   (e) Failed to warn the Plaintiffs of the hazards of a non-flame retardant tent.

   (f) Failed to warn the Plaintiffs' son of the hazards of non-flame retardant tents.

   (g) Failed to warn the Plaintiffs of the Defendant's knowledge of at least eight (8) tent fires sustained by Boy Scouts prior to April 9, 1972.

   (h) Failed to publish any program for tent fire hazards in training young boys for a camping environment.

   (i) Failed to establish any training program for tent hazards for the rank of "Tenderfoot" in the Boy Scouts.

   (j) Failed to provide at the "Camporee" any fire fighting equipment.

   (k) Failed to provide any night watch or night safety patrol at the "Camporee".

   (*l*) Failed to prove any medical attention and treatment for the Plaintiffs' son.

   (m) Failed to enforce known safety standards for camping by authorizing and permitting cooking and heating appliances fired by highly combustible fuels.

   (n) Failed to train and instruct Scout Leaders in the hazards of non-flame retardant tents.

   (o) Carelessly and negligently selected adult leaders for the Plaintiffs' son.

   (p) Carelessly and negligently permitted the Boy Scouts at the "Camporee" the use of matches, candles, combustible fuels, and explosives.

   (q) The Defendant did willfully withhold its knowledge of the extreme hazards of non-flame retardant tents and of its knowledge of tent fires involving Boy Scouts with the intention of avoiding any adverse publicity for the Defendant's Scouting Program.

As a result of the above alleged acts or omissions, plaintiffs seek damages for past and future medical expenses, loss of their son's services and support, mental and physical injury and anguish, and costs.

Defendant interposed several defenses by way of answer, including the defense of charitable immunity, the validity of which is the real issue before this Court on defendant's motion for summary judgment. It goes without saying that defendant's motion must be granted if there is no genuine issue of any material fact and defendant is entitled to judgment as a matter of law.

In *Brown v. Anderson County Hospital Association*, 268 S.C. 479, 234 S.E.2d 873 (1977), the South Carolina Supreme Court traced the development of the doctrine of charitable immunity in South Carolina:

   The decisions of this Court indicate that the present state of the law in South Carolina with respect to charitable immunity is the following: It is contrary to public policy to hold a charitable institution responsible for the negligence of its servants selected without due care, *Lindler v. Columbia Hospital*, 98 S.C. 25, 81 S.E. 512 (1914), or for servants, agents, employees, or superior officers selected without due care. *Vermillion v. Woman's College of Due West*, 104 S.C. 197, 88 S.E. 649 (1916). The fact that a patient in a charitable hospital pays for a room and attendance does not render the hospitable liable for injuries to the patient caused by the negligence of its servants. *Lindler v. Columbia Hospital, supra.* The relation of the injured person to the charity is of no importance so that it is immaterial whether the injured person is an employee or invitee of the institution. *Vermillion v. Woman's College of Due West, supra.* A charitable institution, however, is not exempt from liability for trespass and nuisance arising out of its activities

as a lessee. *Peden v. Furman University,* 155 S.C. 1, 151 S.E. 907 (1930). Nor does immunity extend to a situation where the activity out of which the liability arises is primarily commercial in character and wholly unconnected with the charitable purpose for which the corporation was organized. *Eiserhardt v. State Ag. and Mech. Soc. of S. C.,* 235 S.C. 305, 111 S.E.2d 568 (1959). Churches have also been exempted from liability for negligence, *Decker v. Bishop of Charleston,* 247 S.C. 317, 147 S.E.2d 264 (1966), holding additionally that procurement of liability insurance by the charity does not create liability to the person injured where the charity is otherwise immune from liability. Finally, where the charity commits an intentional tort, it may not interpose the defense of charitable immunity. *Jeffcoat v. Caine,* 261 S.C. 75, 198 S.E.2d 258 (1973).[2]

[2] The Court in *Jeffcoat* stated that "The foregoing are the prior decisions of this Court . . . . There can be no doubt that the decisions in *Lindler, Vermillion,* and *Decker* contain broad general expressions to the effect that charitable institutions are exempt from all tort liability. However, the broad statement of a rule of complete exemption from tort liability was unnecessary to a decision in those cases, and the rule of charitable immunity has never been extended by our decisions beyond the facts in *Lindler, Vermillion,* and *Decker . .* ." 234 S.E.2d at pp. 874–875.

One additional aspect of the doctrine of charitable immunity, not mentioned in the survey by the Supreme Court in *Brown,* is found in the holding of *Vermillion* :

> The rule of total exemption is, perhaps, without exception, based upon grounds of public policy. That is the principle upon which liability was denied by the court en banc in the *Lindler* Case, and, as has been shown, its logical application requires exemption of public charities for the torts of their superior officers and agents as well as for those of their servants or employés, *whether these be selected with or without due care.* 88 S.E. at p. 650 [emphasis added].

The Supreme Court in *Brown* effectively modified the doctrine of charitable immunity as it exists in South Carolina as follows:

The arguments advanced in favor of abolition of the doctrine of charitable immunity are not persuasive. Total abrogation of the doctrine would result in the failure to balance competing yet equally important interests of hospitals and of those persons who are the objects of the hospitals' torts. We, therefore, adopt an intermediate ground and hold that anyone injured through tortious acts of commission or omission of the agents, servants, employees or officers of a charitable hospital in this State may recover damages against such hospital, if the aggrieved party can establish that the injuries occurred because of the hospital's heedlessness and reckless disregard of the plaintiff's rights. This standard of proof is one which is higher than that of simple negligence. It parallels that standard of proof required under S.C. Code § 46–801 (1962), known popularly as the Automobile Guest Statute. Immunity fosters neglect and irresponsibility, while liability encourages the exercise of due care. This basic cornerstone of our common law system of jurisprudence is frustrated by total immunity.

We emphasize that our holding is applicable only to hospitals, including this defendant. We do not extend it so as to abrogate or modify the defense of charitable immunity as to churches, rescue missions, orphanages, colleges, and other institutions which are charitable in nature, purpose and operation. The previous decisions of this Court inconsistent with the holding set forth herein are overruled. 234 S.E.2d at pp. 876–877.

By way of further restriction on its modification of charitable immunity, the Court in *Brown* pronounced that its holding was to apply only to that case and to those causes of action arising after the date of filing of *Brown,* May 10, 1977. It is obvious from the explicit holding of *Brown,* despite the quotation in footnote 2 of *Brown* from *Jeffcoat,* that charitable immunity remains a valid defense for the unintentional torts of charitable institutions other than hospitals. The question for this Court to decide

is whether or not the Boy Scouts of America in the present case can avoid liability under that doctrine for the acts and omissions enumerated in plaintiffs' complaint. For purposes of the instant motion, those allegations will be deemed true.

The threshold question for determination is whether or not the Boy Scouts of America qualifies as a charitable institution. The true nature of a corporation may be shown from the manner in which it conducts its business, as well as from its articles of incorporation. *Eisenhardt, supra.* To demonstrate the true nature of the Boy Scouts of America and the manner in which it conducts its affairs, defendant submits the affidavit of Harvey L. Price, Chief Scout Executive of the Boy Scouts of America, together with a copy of defendant's Charter and Bylaws, Rules and Regulations, and Scout Handbook, all of which are attached to and incorporated by reference in the affidavit of Mr. Price. The Boy Scouts of America was chartered by Act of Congress (39 Stat. 227, 36 U.S.C. § 21, et seq.). The purpose of the Boy Scouts is found in Section 3 of the Act (36 U.S.C. § 23) and reads as follows:

The purpose of the corporation shall be to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which were in common use by Boy Scouts on June 15, 1916.

Furthermore, Section 4 of the Act (36 U.S.C. § 24) provides the following:

The corporation may acquire, by way of gift, all the assets of the existing national organization of Boy Scouts, a corporation under the laws of the District of Columbia, and defray and provide for any debts or liabilities to the discharge of which said assets shall be applicable; but said corporation shall have no power to issue certificates of stock or to declare or pay dividends, its object and purposes being solely of a benevolent character and not for pecuniary profit to its members.

The above-quoted sections of the Act of Incorporation clearly indicate the charitable and benevolent nature of the Boy Scouts and support defendant's contention that it does not exist to secure a profit to its members. Moreover, Section 8 of the Act (36 U.S.C. § 28), as amended, reads as follows:

On or before the 1st day of April of each year the said Boy Scouts of America shall make and transmit to Congress a report of its proceedings for the year ending December 31 preceding.

This provision is obviously designed to insure that the Boy Scouts of America adheres to its stated purposes and maintains its posture as a benevolent corporation, not for pecuniary profit to its members.

■ The affidavit of Harvey L. Price declares that the actual operations of defendant comport with the above-quoted sections of its charter and that the camporee, at which plaintiffs' son was burned was a sanctioned event of the Boy Scouts designed "to teach patriotism, courage, self-reliance, and kindred virtues", all of which are expressly stated as purposes of the organization. Thus defendant has presented evidence of the benevolent nature of the Boy Scouts, of its actual operations comporting with its charitable purposes, and of the camporee at which the injury occurred being a sanctioned activity in furtherance of the Boy Scouts' stated purposes. Plaintiffs have offered no evidence that would refute these assertions; thus, this Court finds that the Boy Scouts of America is a charitable corporation.

■ The next question to be decided is whether or not a charitable corporation such as the Boy Scouts is immune from liability under the substantive law of the State of South Carolina which this Court is bound to follow under the *Erie* doctrine.[1] In their brief in opposition to defendant's motion for summary judgment, plaintiffs submit "that the only issue before this

---

1. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Court is whether the plaintiff has *adequately alleged* a sufficient *degree* of negligence to sustain his burden for pleading purposes only." [emphasis added by plaintiffs]. Assuming, as plaintiffs contend, that the acts and omissions enumerated in the complaint amount to more than simple negligence, plaintiffs still have not alleged that defendant has committed any intentional tort. In fact, plaintiffs concede this point in their brief. Thus, plaintiffs' allegations do not fall within the "intentional tort" exception to immunity as enunciated in *Jeffcoat.* Thus, even though plaintiffs allege reckless, willful and wanton conduct on the part of defendant, the doctrine of charitable immunity still remains as a valid defense on behalf of the Boy Scouts.[2] This conclusion is dictated by the case of *Crowley v. Bob Jones University*, 268 S.C. 492, 234 S.E.2d 879 (1977), which was decided on the same day as *Brown.*

In *Crowley*, the complaint alleged that plaintiff sustained injuries to her right eye while performing required duties at Bob Jones Academy, a private school owned and operated by defendant. Additionally, plaintiff complained that defendant failed to provide proper medical treatment, and, consequently, plaintiff lost the effective vision of the eye. The complaint alleged that the delicts of the defendant constituted " 'gross and willful negligence, recklessness and carelessness', and were a proximate cause of the injuries." As one of its defenses, defendant interposed the doctrine of charitable immunity. The plaintiff demurred to that defense, and the demurrer was sustained by the trial judge on the ground that charitable immunity does not extend to cases involving gross negligence, recklessness or willfulness. In reversing the trial court, the Supreme Court stated the following:

Four years ago we held that the doctrine of charitable immunity is not a valid

defense to the commission of an intentional tort. *Jeffcoat v. Caine*, 261 S.C. 75, 198 S.E.2d 258 (1973). In the case now before us, the trial judge incorrectly interpreted *Jeffcoat* to hold that the doctrine of charitable immunity is an applicable defense only in cases of simple or mere negligence. This was not our holding in *Jeffcoat.* Under the rationale of that case, if the plaintiff can prove that the defendant has committed an intentional tort, then the plaintiff may recover damages despite the fact that the defendant is a charitable or eleemosynary institution. Thus, in the instant case, it was error for the trial judge to have granted the Demurrer. 234 S.E.2d at p. 880.

It is obvious, in light of *Crowley*, that plaintiffs have not alleged a sufficient degree of negligence to sustain their burden for pleading purposes. Plaintiffs contend that there is no rule in South Carolina which holds charities liable only for intentional torts. In light of *Crowley*, this Court finds that that is in fact the rule in this state. Moreover, as noted hereinabove, the *Brown* decision, in modifying this rule to extend liability to charitable corporations for reckless and heedless conduct, carefully restricted its holding to *hospitals.* Even the dissenting opinion in *Brown* which advocated abrogation of charitable immunity for all types of tortious conduct, apparently including simple negligence, clearly indicated, in at least four places, that this abrogation should apply to *hospitals only.* In addition, even if *Brown* is read to extend liability to charitable organizations in addition to hospitals (which would fly in the face of its explicit limited holding), that decision would still not benefit plaintiffs in the present case in light of the Supreme Court's clear statement that the holding in *Brown* applies only to *Brown* and to those causes of action arising after May 10, 1977. The

2. Even though plaintiffs have alleged negligent selection of the scout leader, as noted above, under *Vermillion*, negligent selection is not an exception to the rule of charitable immunity in South Carolina. Moreover, this Court is not at all certain that such a "volunteer" could create liability for the Boy Scouts under the principles of the law of agency and/or respondeat superi-

or. But neither that determination, nor the determination of whether the scout leader was negligently selected if he could so create liability for the Boy Scouts need be made in light of the holding in *Vermillion* that negligent selection is not an exception to the defense of charitable immunity.

cause of action in the present case arose in April 1972.

Furthermore, the legislature of this state enacted Act 182 of 1977, approved by the Governor on June 10, 1977 (one month after *Brown*), dealing with the issue of charitable immunity as it related to hospitals and other medical facilities. The legislature could have modified *Brown* to the extent that immunity for all charitable organizations would be abrogated. The legislature chose to extend *Brown* no further than to add "other *medical* facilities", lower the degree of misconduct necessary to strip such medical facilities of charitable immunity and to limit the amount of recovery.

Both the Supreme Court and the legislature have been active recently in explaining and modifying the old doctrine of charitable immunity, but neither has chosen to impose liability upon charitable organizations other than hospitals and other medical facilities for anything less than an intentional tort. This Court cannot strike down the entire doctrine of charitable immunity when the State Supreme Court and Legislature have refused to do so. This Court has a duty to interpret the law, not to make the law.

IT IS, THEREFORE, ORDERED that defendant's motion for summary judgment be and the same is hereby granted.

AND IT IS SO ORDERED.